In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 19-2930

IN RE: RYZE CLAIMS SOLUTIONS, LLC,

*Petitioner*.

---

Petition for Writ of Mandamus
from the Southern District of Indiana,
Indianapolis Division.

No. 1:18-cv-01767-JMS-MJD — **Jane Magnus-Stinson**, *Chief Judge*.

---

ARGUED APRIL 8, 2020 — DECIDED AUGUST 3, 2020

---

Before RIPPLE, BRENNAN, and SCUDDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Leslie Billings is a party to an employment agreement with his former employer, RYZE Claim Solutions, LLC ("RYZE"). The employment agreement contains a forum-selection clause providing that Mr. Billings must bring claims against RYZE in an Indiana court, either in Marion County or Hamilton County, or in a federal court in the Southern District of Indiana. Mr. Billings nevertheless filed this action in a California state court. RYZE removed

the action to the United States District Court for the Eastern District of California. Relying on *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 62–63 (2013), the Eastern District of California concluded that Mr. Billings had failed to show why the forum-selection clause should not control and granted RYZE's motion to transfer venue under 28 U.S.C. § 1404(a) to the Southern District of Indiana.

In due course, the district court in Indiana granted RYZE's motion for summary judgment on Mr. Billings's federal claims. The district court then transferred, sua sponte, the case back to the Eastern District of California. It explained that its own docket was congested and that the Eastern District of California had a greater familiarity with California labor law. When the case was docketed once again in the Eastern District of California, RYZE petitioned this court for a writ of mandamus directing the Southern District of Indiana to request that the Eastern District of California transfer the action back to the Southern District of Indiana.[1]

We must give forum-selection clauses "'controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Because no such exceptional circumstances exist here, the district court de-

---

[1] The district court in the Southern District of Indiana had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Our jurisdiction is secure under 28 U.S.C. § 1651. *See In re Mathias*, 867 F.3d 727, 729 (7th Cir. 2017) ("[M]andamus is the appropriate procedural method to obtain review of a district court's decision on a § 1404(a) transfer motion.").

parted from the settled approach for applying the federal transfer statute in cases governed by a forum-selection clause. Accordingly, we grant the petition and issue the writ of mandamus.

# I

## BACKGROUND

### A.

RYZE is an Indiana business. It employs remote workers across the Nation. One of these workers, Mr. Billings, filed this action against RYZE and ten unnamed defendants in a California state court. As amended, the complaint stated a claim alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., on behalf of Mr. Billings and other current and former RYZE employees nationwide. He also alleged various violations of the California Labor Code and the California Business and Professions Code on behalf of a putative class of current and former RYZE employees who are or were employed within the state of California.

RYZE removed the action to the United States District Court for the Eastern District of California. Then, relying on a forum-selection clause in the employment agreement between RYZE and Mr. Billings, RYZE moved to transfer venue under 28 U.S.C. § 1404(a) to the Southern District of Indiana. Ruling that Mr. Billings had failed to show why the forum-selection clause should not be "given controlling weight," the district court in California granted RYZE's

transfer motion.[2] The case was transferred to the Southern District of Indiana.

Once in the Southern District of Indiana, the parties engaged in discovery and the district court resolved numerous discovery-related disputes. The court also granted RYZE's motion to add counterclaims against Mr. Billings, alleging breach of the employment agreement,[3] misappropriation of trade secrets in violation of the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 et seq., conversion in violation of Indiana Code § 34-24-3-1, and computer trespass in violation of Indiana Code § 35-43-2-3. The parties then filed multiple other motions, including Mr. Billings's motion to certify the action as a class action under Federal Rule of Civil Procedure 23(b)(3) and as a collective action under the FLSA, 29 U.S.C. § 216(b),[4] RYZE's motion to strike an expert report submitted by Mr. Billings, and RYZE's motion for summary judgment regarding Mr. Billings's FLSA claims.

---

[2] R.19 at 26 (quoting *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). The court concluded that the relevant portion of the forum-selection clause was valid and enforceable. *See id.* at 21, 25–26.

[3] The employment agreement is governed by Indiana law. R.7-2 at 8 (Employment Agreement ¶ 8(b)).

[4] Section 216(b) of Title 29 of the United States Code, "authorizes employees to act together to seek redress for violations of the statute's minimum wage and maximum hour provisions." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (holding that "employees who institute a collective action against their employer under the terms of the FLSA may at the same time litigate supplemental state law claims as a class action certified according to FRCP 23(b)(3)").

The district court then granted RYZE's motion for summary judgment on Mr. Billings's FLSA claim and denied Mr. Billings's class certification motion to the extent he sought conditional certification of an FLSA collective action. Two matters remained briefed and outstanding: RYZE's motion to strike Mr. Billings's expert report and Mr. Billings's class certification motion under Federal Rule of Civil Procedure 23.

**B.**

Two days after it granted RYZE's motion for summary judgment on the FLSA claim, the Southern District of Indiana sua sponte ordered the parties to show cause "why this matter should not be transferred to [the] U.S. District Court for the Eastern District of California for further proceedings."[5] The district court stated that "[t]he backdrop of this litigation has changed dramatically since the Eastern District of California evaluated the public-interest factors and trans-

---

[5] R.101 at 4. It is well established that a district court has the authority to sua sponte transfer a case under 28 U.S.C. § 1404. "The language of the statute is broad enough that a district court can order transfer on its own initiative." 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3844 (4th ed. 2019) (collecting cases); *see also Germaine v. St. Germain*, 435 Fed. App'x 530, 532 (7th Cir. May 19, 2011) (noting that the district court sua sponte ordered the case to be transferred); *Carver v. Knox Cty.*, 887 F.2d 1287, 1291 (6th Cir. 1989) ("In fact, 28 U.S.C. § 1404(a) does not require a motion; a district court may transfer a case sua sponte*."); *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Such transfers may be made sua sponte*."); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993) (stating that the district court properly transferred the case "[o]n its own motion").

ferred this matter to this District."[6] It also emphasized its own docket congestion and noted that "the citizens of California have a strong interest in adjudicating claims based upon its labor laws."[7]

The court ordered RYZE to respond to the order first. RYZE contended in its response to the order to show cause that "[t]here is nothing exceptional about this case that would warrant disregarding that forum selection agreement now."[8] RYZE submitted that transferring the case back to the Eastern District of California, after the Southern District of Indiana had "already invested its own substantial time and effort in deciding a summary judgment motion, would not serve the purposes of conserving judicial resources."[9] RYZE, contended that, despite the district court's docket congestion, "[t]he median time from filing to trial in civil cases [was] substantially shorter in the Southern District of Indiana at 26.4 months compared to *nearly a year longer* in the Eastern District of California at 36.8 months."[10]

The Southern District of Indiana rejected RYZE's view of the proper measure of court congestion. In the court's view, an assessment of "court congestion" also takes into account "the extent to which this Court's unprecedented caseload

---

[6] R.101 at 3.

[7] *Id.* at 4.

[8] R.103 at 1.

[9] *Id.* at 2.

[10] *Id.* at 8.

strain impacts the ability of court and clerk staff to fulfill their duties."[11] Furthermore, the district court rejected the suggestion "that it might be able to more quickly resolve this matter than the Eastern District of California," stating that its own "background familiarity" with the case was "far out-stripped by the Eastern District of California's familiarity with California's labor code."[12] The district court rejected RZYE's remaining arguments and ordered the case to be transferred back to the Eastern District of California.

On July 30, 2019, this action was docketed once again in the Eastern District of California. On October 3, 2019, the Eastern District of California ordered the parties to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction. On the same day, RYZE sought a petition for writ of mandamus from this court. After Mr. Billings filed a response, we ordered the case to proceed to full briefing and oral argument.

## II

## DISCUSSION

### A.

Section 1651 of Title 28 of the United States Code, which, among other things, codifies the common law writ of man-damus, provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

---

[11] R.105 at 5.

[12] *Id.* at 6.

agreeable to the usages and principles of law." We have held
that "mandamus is the appropriate procedural method to
obtain review of a district court's decision on a § 1404(a)
transfer motion" because, "[w]ithout the availability of
mandamus relief, the question of proper venue escapes
meaningful appellate review." *In re Mathias*, 867 F.3d 727,
729 (7th Cir. 2017); *see also Hicks v. Duckworth*, 856 F.2d 934,
935 (7th Cir. 1988) (holding that mandamus is appropriate
"to correct an erroneous transfer out of circuit"). We will is-
sue a writ to reverse a transfer order if the order was a "'vio-
lation of a clear and indisputable legal right, or, at the very
least, is patently erroneous.'" *In re Mathias*, 867 F.3d at 739
(quoting *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013)). We
review a district court's transfer decision for an abuse of dis-
cretion. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973, 977 (7th Cir. 2010). "[W]here the court has con-
sidered *all* relevant public and private interest factors, and
where its balancing of these factors is *reasonable*, its decision
deserves substantial deference." *Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 257 (1981) (emphasis added); *Rsch. Automation*,
626 F.3d 976 ("Where a district court gives thoughtful con-
sideration to the factors applicable to a transfer analysis un-
der section 1404(a), we give its decision substantial defer-
ence.").

**B.**

We begin with the language of the federal transfer statute
that must guide a district court when considering a motion
to transfer a case from one federal district to another. Section
1404(a) provides that "[f]or the convenience of parties and
witnesses, in the interest of justice, a district court may trans-
fer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When deciding whether to transfer a case under § 1404(a), a district court therefore "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62 & n.6. In determining whether the transfer would be in the "interest of justice," a court may consider several factors, including "docket congestion and likely speed to trial in the transferor and potential transferee forums," "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Rsch. Automation*, 626 F.3d at 978. When considering whether to transfer a case, a court must engage in a "'flexible and individualized analysis'" and "look beyond a narrow or rigid set of considerations in their determinations." *Id.* (quoting *Stewart*, 487 U.S. at 29).

These considerations, however, will "rarely" outweigh the parties' private interests in enforcing a forum-selection provision. *Atl. Marine*, 571 U.S. at 64. "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* Two of these adjustments are relevant to this case.[13] First, "the plaintiff's choice of forum merits no weight." *Id.* at 63. Instead, the plaintiff, in opposing the forum-selection clause, "bears the burden of establishing that transfer to the forum for which

---

[13] The third adjustment is that a change of venue pursuant to 28 U.S.C. § 1404(a) "will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

the parties bargained is unwarranted." *Id.* Moreover, a court "should not consider arguments about the parties' private interests" because the parties, in contracting to a forum-selection clause, "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Id.* at 64. Accordingly, the private-interest factors are deemed "to weigh entirely in favor of the preselected forum," and a court "may consider arguments about public-interest factors only." *Id.* When this analysis is properly applied, it "requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60 (quoting *Stewart*, 487 U.S. at 33). Parties expect to litigate in their agreed-to forum, and "courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66.

## C.

Our examination of the record convinces us that the district court employed a flawed methodology in deciding to send this case back to the Eastern District of California. First, it is evident that the district court improperly placed the burden on RYZE to justify keeping the case in Indiana. This improper allocation of the burden is evident in the district court's ordering RYZE to respond first to the court's order to show cause. As the party resisting the application of the forum-selection clause, Mr. Billings, not RYZE, had the burden of justifying a transfer contrary to the terms of that clause.[14]

---

[14] *Atl. Marine*, 571 U.S. at 64. ("[T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.").

The district court also erred in concluding that the Eastern District of California's familiarity with the applicable state law "weigh[ed] heavily in favor of transfer."[15] Although "each court's relative familiarity with the relevant law" is a public-interest factor that may be considered, *Research Automation*, 626 F.3d at 978, the district court's heavy reliance on this factor contradicts the Supreme Court's guidance in *Atlantic Marine*. There, the Supreme Court noted that "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine*, 571 U.S. at 67.[16]

---

[15] R.105 at 8.

[16] Notably, the Court previously had expressed skepticism about the "expertise" of a local district court in determining the content of a state's law. In *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991), while deciding whether a court of appeals should defer to a district court's interpretation of the law of the state in which the district court sat, found itself "unpersuaded" by that proposition, which it thought based on an "overbroad generalization[]." It continued:

> the proposition that a district judge is better able to "intuit" the answer to an unsettled question of state law is foreclosed by our holding in *Erie*. The very essence of the *Erie* doctrine is that the bases of state law are presumed to be communicable by the parties to a federal judge no less than to a state judge. Almost 35 years ago, Professor Kurland stated: "Certainly, if the law is not a brooding omnipresence in the sky over the United States, neither is it a brooding omnipresence in the sky of Vermont, or New York or California." Philip B. Kurland, *Mr. Justice Frankfurter, the Supreme Court and the Erie Doctrine in Diversity Cases*, 67 Yale L. J. 187, 217 (1957). *See S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting) ("The common law is not a brooding omnipresence in

(continued … )

The Southern District of Indiana, in holding that this factor is entitled heavy weight, did not identify, moreover, any features of the relevant California law that were "exceptionally arcane." *Id.* at 68; *see also Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at *3 (N.D. Ill. Jan. 4, 2017) ("[N]or have Plaintiffs identified any unique or idiosyncratic aspect of Illinois law at issue here that would make this court's purported greater familiarity with Illinois law significant."). We therefore must conclude that the district court erred in concluding that this factor weighed heavily in favor of a transfer back to the Eastern District of California.

The district court also erred in its treatment of another public-interest factor, "'the administrative difficulties flowing from court congestion.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The district court concluded "that the caseload and scheduling congestion in this District and on the undersigned's trial calendar weigh in favor of transfer."[17] The district court also rejected RYZE's

---

( … continued)

> the sky but the articulate voice of some sovereign or
> quasi-sovereign that can be identified").

*Id.* at 238–39 (internal citations edited) (parallel citations omitted).

The Court continued: "To the extent that the available state law on a controlling issue is so unsettled as to admit of no reasoned divination, we can see no sense in which a district judge's prior exposure or nonexposure to the state judiciary can be said to facilitate the rule of reason." *Id.* at 239. Given this skepticism, we see no reason why a non-local district court would be less capable of discerning the content of another state's law.

[17] R.105 at 6.

argument that a court's docket congestion is only considered under this public-interest factor to the extent it affects the case's time to resolution. Instead, the district court broadly construed "administrative difficulties" to include "trial calendar congestion, the amount of time the Court can dedicate to cases, and the extent to which this Court's unprecedented caseload strain impacts the ability of court and clerk staff to fulfill their duties."[18]

The district court evaluated this factor through a different lens than the one usually employed by the federal courts. We have held that, "[t]o the extent that court congestion matters, what is important is the *speed with which a case can come to trial and be resolved.*" *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (emphasis added). We further explained:

> [T]he real issue is not whether a dismissal [for *forum non conveniens*] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket. In addition, … [t]he *forum non conveniens* doctrine should not be used as a solution to court congestion; other remedies, such as placing reasonable limitations on the amount

---

[18] *Id.* at 5. In its response to the order to show cause, RYZE explained that this factor weighed against transferring the case back to the Eastern District of California because "[t]he median time from filing to trial in civil cases is substantially shorter in the Southern District of Indiana at 26.4 months compared to *nearly a year longer* in the Eastern District of California at 36.8 months." R.103 at 8.

> of time each side may have to present evi-
> dence, are more appropriate.

*Id.* at 958–59 (first and last alterations in original) (citations omitted) (internal quotation marks omitted).

Our perspective is shared by other circuits. *See Gates Lear-jet Corp. v. Jensen,* 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."); *In re Scott,* 709 F.2d 717, 721 (D.C. Cir. 1983) ("The law is well established that a federal court may not order transfer under section 1404(a) merely to" alleviate docket congestion); *Fannin v. Jones,* 229 F.2d 368, 369 (6th Cir. 1956) (same).[19]

Although the district court noted that it could not sched-ule a trial for at least fourteen months from the transfer deci-sion (or longer if any scheduling delay occurred),[20] it never addressed whether trial would be speedier in the Eastern

---

[19] We also note that the district court did not consider the additional time that would be incurred by transferring the case back to the Eastern District of California. This action was docketed with the Southern Dis-trict of Indiana for a year. During that time, the parties engaged in dis-covery and motions practice, the district court held numerous confer-ences with the parties, and it ruled on RYZE's motion for summary judgment. Two fully briefed issues, RYZE's motion to strike Mr. Billings's expert report and Mr. Billings's class certification motion, remained unresolved by the district court when it ordered the parties to show cause why the action should not be transferred back to the Eastern District of California. Presumably, the Eastern District of California would need additional time to familiarize itself with this action.

[20] R.105 at 5–6.

District of California. Instead, the district court merely observed that its own docket was crowded, and its resources strained, before concluding that this factor weighed in favor of a transfer.[21]

---

[21] Mr. Billings maintains that the Southern District of Indiana did not abuse its discretion in considering its docket congestion under this public-interest factor. He invites our attention to *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299 (7th Cir. 1955), in which we stated, "'[a]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.'" *Id.* at 304 n.4 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). That case is of little value in our present inquiry because it did not involve a forum-selection clause. Indeed, the plaintiff's choice of forum was afforded "'[a] large measure of deference.'" *Id.* at 304 (quoting *Josephson v. McGuire*, 121 F. Supp. 83, 84 (D. Mass. 1954)).

Mr. Billings also relies on *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009), where the court stated that "[t]he likely speed to trial 'factor appears to be the most speculative … and case disposition statistics may not always tell the whole story.'" Respondent's Br. 22 (quoting *In re Genentech, Inc.*, 566 F.3d at 1347). The quoted language fails to capture fully the court's intended meaning. In *In re Genentech*, the Federal Circuit first stated that, "[t]o the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d at 1347. Then, in stating that "this factor appears to be the most speculative," *id.*, the Federal Circuit cited *Collins v. American Automobile Insurance Co. of Saint Louis*, 230 F.2d 416, 419 (2d Cir. 1956). In *Collins*, the Second Circuit explained that it has "often questioned reliance upon the fact of locally congested dockets as a proper ground for an order of transfer." *Id.* at 419. Besides the fact that "conditions below may be no worse than elsewhere," the court stated that "we think it dangerous to suggest that a judge may deny entrance to his court to a litigant on the ground of his serious burdens; his understandable complaints should be directed elsewhere, as to executive and legislature." *Id.*

Most importantly, the district court should have given more weight to the role that forum-selection clauses play in the proper application of § 1404(a)'s command that, in deciding a transfer motion, the district court consider "the interests of justice." In *Atlantic Marine*, the Supreme Court unequivocally emphasized that a forum-selection clause plays a very significant role in furthering "'vital interests of the justice system.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 22 (Kennedy, J., concurring)). These clauses go a long way toward establishing predictability and certainty in legal transactions.

> [A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and *conserving judicial resources that otherwise would be devoted to deciding those motions.*

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991) (second emphasis added). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

This case is not an "exceptional" case. Indeed, for purposes of the federal transfer statute, it is a very "ordinary" action.[22] Notably, neither the Southern District of Indiana nor Mr. Billings identified any decision since *Atlantic Marine* in which a district court refused to enforce a valid forum-selection agreement under § 1404(a) due to exceptional circumstances. RYZE invites our attention to only two decisions. The first of these cases is *Ha Thi Le v. Lease Finance Group, LLC*, No. 16-14867, 2017 WL 2915488 (E.D. La. May 9, 2017). This case is of very limited help in our present inquiry. There, the district court had to decide whether to sever and transfer some claims while retaining others. The court ultimately decided that "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id.* at *7 (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014)). The second case that RYZE identifies is *Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, No. 08-4578, 2015 WL 65298 (E.D. La. Jan. 5, 2015). As RYZE points out, however, this case is distinguishable because the defendant waited six years before moving to transfer venue. By that time, the district court already had ruled on, among numerous other motions, a motion for summary judgment and a motion for reconsideration.

We have identified several other cases where courts have found extraordinary circumstances. Each of these cases presented a significantly more serious and unusual situation

---

22 Petitioner's Br. 27.

than the one here. For example, the court in *ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*, No. 15-2457, 2015 WL 5818521, at *9 (E.D. Pa. Oct. 6, 2015), the court did not have jurisdiction over one of the parties, and the court could not sever the claims. The court held that "it would require litigation of substantially the same issues in two different courts." *Id.* "The public interest in efficiency served by litigating substantially the same claims in one court rather than two outweighs the prior agreement as to forum … ." *Id.* Similarly, in *In re Dozier Financial, Inc.*, 587 B.R. 637, 650 (Bankr. D. S.C. 2018), the court did not enforce a forum-selection clause where only one of the six defendants was bound by the clause and where splitting up the case would have resulted in "substantially duplicative discovery and court proceedings." The court acknowledged that forum-selection clauses are meant to provide parties with greater predictability about where they would engage in future litigation, but noted that in that particular case, the forum-selection clause did the opposite. *Id.* at 650–51. *See Alabsi v. Savoya, LLC*, No. 18-cv-06510-KAW, 2019 WL 1332191, at *5 (N.D. Cal. Mar. 25, 2019) ("Courts recognize three circumstances in which enforcement of a forum selection clause would be unreasonable: (1) if the inclusion of the forum selection clause was the product of fraud or overreaching, (2) if the party challenging the forum selection clause would effectively be deprived of his day in court if the clause is enforced, or (3) if enforcement would contravene a strong public policy of the forum in which the suit was brought." (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004))); *Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*, No. 17 Civ. 9845 (ER), 2019 WL 140730, at *7 (S.D.N.Y. Jan. 9, 2019) (An exceptional case is "where the action is core to a bankruptcy proceeding, in

which case the policy toward enforcement of fo-rum-selection clauses is 'not so strong' as to mandate en-forcement in the face of strong countervailing public inter-ests in centralizing bankruptcy proceedings, judicial econo-my, and overall justice." (quoting *In re Iridium Operating LLC*, 285 B.R. 822, 836–37 (S.D.N.Y. 2002))).

None of the complications identified by the courts in these cases is present here. Indeed, the clause already had brought the case to the Southern District of Indiana, and that court had partially decided the case. Mr. Billings articulates no compelling reason to seek a return to California at this juncture. The "interests of justice," as delineated in *Atlantic Marine*, clearly require that the district court complete its ad-judication of the case.

## Conclusion

We accordingly grant RYZE's petition for writ of man-damus. The district court deviated substantially from the methodological course of decision-making mandated by the Supreme Court of the United States. This is not the excep-tional or unusual case that would justify giving controlling weight to factors other than the forum-selection clause.

PETITION GRANTED; WRIT ISSUED